IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| LENOX MAGEE,<br>*On behalf of himself and all others similarly situated*,<br><br>    Plaintiff,<br><br>v.<br><br>FIFTH THIRD BANK,<br><br>    Defendant. | Case No.<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Lenox Magee, on behalf of himself and a class of similarly situated individuals, brings this claim for damages and injunctive relief against Defendant Fifth Third Bank ("Fifth Third"), and in support thereof alleges as follows:

**NATURE OF THE ACTION**

1. Fifth Third regularly charges fees on consumer account holders without prior notice, and without consumers' consent.

2. Fifth Third's ATM fee revenue is one of the primary sources of Fifth Third's profits. Under specific circumstances set forth in the contract governing Consumer Deposit Accounts, Fifth Third assesses fees on accountholders who withdraw funds from out-of-network ATMs. This litigation concerns fees assessed on balance inquiries made on "out-of-network" ATMs, meaning ATMs not owned or operated by Fifth Third.

3. The Fifth Third Bank Deposit Account Rules and Regulations ("Account Agreement"), the Fifth Third Bank Consumer Account Pricing Services brochure ("Pricing

Brochure"), and the Fifth Third Bank Debit Card Disclosure and Card Agreement ("Debit Card Agreement") specifically identify the fees that Fifth Third Bank charges consumers. However, Fifth Third Bank makes a practice of charging fees that are not disclosed in either the Account Agreement, the Pricing Brochure, or the Debit Card Agreement, the latter two being incorporated in the Account Agreement.

4. Specifically, Fifth Third Bank does not disclose that it will charge a fee simply for checking an account balance at an out-of-network ATM. And, Fifth Third does not disclose to consumers that when they check their account balance in connection with making a withdrawal from an out-of-network ATM, Fifth Third will charge them *two fees*.

5. This practice breaches the contract governing the relationship between Fifth Third and its customers.

6. The assessment of these fees without disclosing that they would be charged to Fifth Third's customers is also an unfair and deceptive practice.

## PARTIES

7. Plaintiff Lenox Magee is a citizen and resident of Chicago, IL.

8. Defendant Fifth Third Bank is a national bank with its headquarters and principal place of business located in Cincinnati, Ohio. Among other things, Fifth Third Bank is engaged in the business of providing retail banking services to consumers, including Plaintiff and the putative classes, which includes the issuance of debit cards for use by consumers in conjunction with their checking accounts. Fifth Third operates banking centers and conducts business throughout the United States.

## JURISDICTION

9. This Court has jurisdiction pursuant to under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate

claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Fifth Third.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1).

## FACTS

11. Fifth Third discloses fees to its customers in three documents governing Consumer Deposit Accounts: the Account Agreement, the Pricing Brochure, and the Debit Card Agreement. See attached Exhibits 1 and 2.

12. According to these documents, Fifth Third is only permitted to assess fees on accountholders who withdraw funds from out-of-network ATMs under specific circumstances.

13. None of these documents discloses Fifth Third Charges a fee when a customer simply checks his or her account balance at an out-of-network ATM, and neither document discloses that Fifth Third charges a customer *two fees* when he or she checks his or her balance prior to making a withdrawal from an out-of-network ATM.

14. Fifth Third assesses such fees in violation of its contractual obligations and without the consent and agreement to its customers.

15. The Pricing Brochure discloses fees as follows:

| | |
|---|---|
| Fifth Third ATM fee | $0 – No Charge to use Fifth Third ATMs |
| Non-Fifth Third ATM Transactions | $2.75 for U.S. transactions |
| | $5 for international transactions |
| | Other ATM network owners may also assess a usage fee |

16. The Pricing Brochure does not define "transactions" and does not reference balance inquiries. Nothing in the Pricing Brochure warns customers that Fifth Third will assess a fee for a balance inquiry, or that Fifth Third will assess two fees when a customer checks his or her balance prior to making a withdrawal from an out-of-network ATM.

17. The Account Agreement similarly does not disclose that a fee will be charged for an

out-of-network balance inquiry, or that two fees will be charged for a balance inquiry in connection with an ATM withdrawal. In the section of the Account Agreement entitled "Pricing and Services Available to Consumer Deposit Accounts," Fifth Third states:

| | |
|---|---|
| Fifth Third and Partner Networks ATM Fee | $0 – No charge to use Fifth Third ATMs or partner network ATMs |
| Non Fifth Third ATM Fee | $2.75 for U.S. transactions<br>$5 for international transactions<br>Other ATM network owners may also assess a usage fee<br>**No charge to use partner network ATMs** |

18. Again, "transaction" is not defined in the Account Agreement to include balance inquiries.

19. The Account Agreement only references balance inquiries in one other section, completely separate from the Account Agreement's discussion of the fees it will charge on Consumer Deposit Accounts. Under the heading "ELECTRONIC FUND TRANSFER" and the subheading "Transfer Types and Limitations," Fifth Third States:

> We reserve the right to impose a fee and to change fees upon notice to you. A fee may be imposed by an automated teller machine (ATM) and by any network used to complete the transaction, when you initiate an electronic fund transfer or make a balance inquiry.

20. This language in no way warns customers that in addition to fees imposed by the out of network ATM operator or a network, Fifth Third will *also* charge *its own fees* just because the customer checks the account balance.

21. Fifth Third never gave notice to Magee or its other customers that it would charge a fee for a balance inquiry performed on an out-of-network ATM, in violation of its promise to do so.

22. The Debit Card Agreement likewise does not disclose that a fee will be charged for

an out-of-network balance inquiry, or that two fees will be charged for a balance inquiry in connection with an ATM withdrawal. The Debit Card Agreement discloses fees as follows:

> You agree to pay all fees we charge in connection with the Electronic Banking services you obtain. We reserve the right to institute a standard charge for the issuance, reissuance, or use of a Card or for the reinstatement of any Card privilege sthat have been suspended, as well as an annual fee and per-item fee for each transaction, and you agree to pay such charges and fees.
>
> **Fee Schedule**
> . . .
> Non Fifth Third ATM Transaction     $2.75 per transaction
> . . .

23. Transaction is not defined to include balance inquiries.

24. The only time balance inquiries are referenced in the Debit Card Agreement does not warn customers that Fifth Third will charge its own fees for a balance inquiry. The Debit Card Agreement states:

> Your account may be subject to charges when using an ATM that does not display the Fifth Third logo. Also, when you use an ATM not owned by us, you may be charged a fee by the ATM operator or any network used (and you may be charged a fee for a balance inquiry even if you do not complete a fund transfer).

25. Like the Account Agreement, this language in no way warns customers that in addition to fees imposed by the out of network ATM operator or a network, Fifth Third will *also* charge *its own fees* just because the customer checks the account balance.

26. Not only does Fifth Third not disclose that it will charge fees for balance inquiries, Fifth Third's disclosures reinforce the common sense presumption that a bank will *not* charge a fee simply for checking the balance of one's own account, and that withdrawing money from an ATM will only incur one fee, even if the customer checks his or her account balance prior to the withdrawal.

27. First, the governing contract documents state that Fifth Third will assess a fee for a

"transaction" at an out-of-network ATM. The ordinary understanding of the word "transaction" does not include a balance inquiry. Merriam-Webster Dictionary defines "transaction" as: "an exchange or transfer of goods, services, or funds." Nothing about this definition suggests that it would include an inquiry into the balance of one's own bank account.

28. Second, the fee schedules for Business Checking Accounts and Business Savings Accounts *do* disclose that a separate fee will be assessed for a balance inquiry—further leading to the reasonable belief that a balance inquiry on a Consumer Deposit Account will not incur a separate fee because the sections governing such accounts make no mention of a balance inquiry fee.

29. Because Fifth Third does not disclose that it will assess a fee for a balance inquiry, there is no warning that a balance inquiry will result in a fee, and that a balance inquiry preceding an ATM withdrawal will cause *two* fees to be assessed. Many ATM screens ask consumers if they would like to check their account balance before proceeding with a transaction, but do not warn that such an inquiry will incur a fee charged by Fifth Third.

30. Fifth Third exploits customers' reasonable expectations that they can check the balance of their account on an ATM at any time. It reinforces this expectation by failing to disclose its practice of charging a fee for a balance inquiry. And then it exploits the expectation by assessing fees for balance inquiries without having contracted with customers for the right to do so.

31. If Fifth Third is going to charge fees, its Account Agreement obligates Fifth Third to fully and fairly disclose such fees. Fifth Third did not do this.

32. In sum, Fifth Third's disclosures never disclose that Fifth Third will charge a fee for a balance inquiry, or that Fifth Third will charge *two* fees when a customer checks the account balance prior to making a withdrawal from an out-of-network ATM. Its balance inquiry fees are charged on top of what the out of network ATM operator or network charges for that inquiry.

33. Plaintiff Magee and other similarly situated customers never contractually agreed to

pay a separate fee to Fifth Third for checking the balance or making a balance inquiry in conjunction with an ATM withdrawal.

## NAMED PLAINTIFF'S FACTS

34. At all relevant times, Magee held a consumer checking account with Fifth Third.

35. On January 23, 2018, Magee checked his balance at an out-of-network ATM in Illinois. Fifth Third assessed him a $2.75 "non-5/3 balance inquiry fee."

36. On February 5, 2018, Magee checked his balance before making a withdrawal from an out-of-network ATM in Illinois. Fifth Third assessed him two $2.75 fees, one for "non-5/3 balance inquiry" and one for "non-5/3 cash withdrawal fee."

37. On April 13, 2018, Magee checked his balance at an out-of-network ATM in Illinois. Fifth Third assessed him a $2.75 "non-5/3 balance inquiry fee."

38. Fifth Third's contract does not permit Fifth Third to assess a $2.75 balance inquiry fee when its customer checks the account balance at an out-of-network ATM.

39. Fifth Third's contract does not permit Fifth Third to assess *two* $2.75 fees when the customer checks the account balance prior to making a withdrawal from an out-of-network ATM.

40. Indeed, Magee was shocked and frustrated to see that he was charged these balance inquiry fees because he had received no warning that the balance inquiry would incur a Fifth Third fee.

41. Magee would not have checked his balance at out-of-network ATMs if he had known that he would be charged a fee let alone two out-of-network fees by Fifth Third for doing so.

## CLASS ACTION ALLEGATIONS

42. Magee brings this action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

43. The proposed classes ("Classes") are defined as:

   a. **Nationwide Class:** All Fifth Third checking account holders who within the applicable statute of limitations were assessed a fee for a balance inquiry at an out-of-network ATM.

   b. **Illinois Consumer Protection Class:** All Fifth Third checking account holders that are citizens of Illinois who within the applicable statute of limitations were assessed a fee for a balance inquiry at an out-of-network ATM.

44. Magee reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

45. Excluded from the Classes are Fifth Third, its parents, subsidiaries, affiliates, officers and directors, any entity in which Fifth Third has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

46. The members of the Classes are so numerous that joinder is impractical. The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Fifth Third's records.

47. Magee's claims are typical of the claims of the Classes in that Magee, like all Class members, was charged fees for balance inquiries at out-of-network ATMs. The factual basis of Fifth Third's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

48. Magee's claims are typical of the claims of other Class members, in that they arise out of the same wrongful policies and practices related Fifth Third's Account Agreement with consumers. Magee has suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

49. There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

50. Among the questions of law and fact common to the Classes are whether:

   a. A balance inquiry is a "transaction";

   b. Fifth Third charged fees for balance inquiries at out-of-network ATMs;

   c. Fifth Third breached its contract by charging fees for balance inquiries at out-of-network ATMs;

   d. Fifth Third violated the Illinois Fraud and Deceptive Business Practices Act by charging fees for balance inquiries at out-of-network ATMs.

   e. Whether Magee and the Classes were damaged by Fifth Third's conduct and if so, the proper measure of damages.

51. Magee is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions. Accordingly, Magee is an adequate representative and will fairly and adequately protect the interests of the Classes.

52. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Fifth Third, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Fifth Third's misconduct will proceed without remedy.

53. Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized

litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
### Breach of Contract
**(On Behalf of the Nationwide Breach of Contract Class)**

50. Magee incorporates by reference each of the allegations set forth in the preceding paragraphs.

51. Magee and Fifth Third have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in Fifth Third's Account Agreement and related documentation.

52. Fifth Third and the members of the class contracted for terms that include only that Fifth Third is permitted to impose a $2.75 fee on transactions at out-of-network ATMs. A balance inquiry is not a transaction.

53. Therefore, Fifth Third is not contractually permitted to charge a $2.75 fee for a balance inquiry at an out-of-network ATM.

54. Fifth Third is not contractually permitted to charge *two* $2.75 fees for a balance inquiry in conjunction with a withdrawal at an out-of-network ATM.

55. Fifth Third breached the terms of its Account Agreement by imposing fees beyond those it was contractually permitted to impose.

56. Fifth Third also breached the covenant of good faith and fair dealing integral to its contract when it charged fees for balance inquiries on out-of-network ATMs. Ohio law, like the law of other states where Fifth Third does business, recognizes an implied covenant of good faith and fair dealing implied in every contract. This covenant requires not only honesty but also

reasonableness in the enforcement of the contract. A breach of the covenant exists where a written agreement is silent with respect to a particular matter and that silence is exploited by one party in a manner inconsistent with the reasonable expectations of the parties. That is what Fifth Third has done in this case.

57. Fifth Third exploits customers' reasonable expectations that they can check the balance of their account on an ATM at any time. It reinforces this expectation by failing to disclose its practice of charging a fee for a balance inquiry. And then it exploits the expectation by assessing fees for balance inquiries without having contracted with customers for the right to do so. Fifth Third's practice of charging its customers a $2.75 fee for a balance inquiry was not reasonable in light of the language of the contract between Fifth Third and its customers. Fifth Third acted in bad faith by assessing fees for balance inquiries on out-of-network ATMs.

58. Magee and members of the class have performed all, or substantially all, of the obligations imposed on them under the Account Agreement.

59. Magee and members of the Class have sustained damages as a result of Fifth Third's breach of the Account Agreement.

## SECOND CLAIM FOR RELIEF
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### On Behalf of the Illinois Consumer Protection Class

60. Magee incorporates by reference each of the allegations set forth in the preceding paragraphs.

61. Magee brings this claim on behalf of the Illinois Consumer Protection Class for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.

62. At all relevant times, Fifth Third conducted "trade and commerce" within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act. *See, e.g.,* 815 ILCS

505/1(f).

63. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1 *et seq.*, prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' …"

64. Fifth Third has committed unfair and deceptive acts in violation of 815 Ill. Comp. Stat. Ann. 505/2 by engaging in the acts and practices alleged herein, specifically assessing fees for balance inquiries conducted on out-of-network ATMs without the consent of accountholders and without providing notice that such fees would be charged.

65. Fifth Third misrepresented or omitted its authority to charge these unconscionable and unreasonable fees. The contract between Fifth Third and accountholders did not authorize Fifth Third to assess these fees.

66. As discussed above, Fifth Third's Account Agreement is misleading and deceptive because it does not disclose the fees that Fifth Third charges upon customers for balance inquiries performed at out-of-network ATMs.

67. Fifth Third knew, or reasonably should have known, that its representations were and are deceptive, misleading, and unlawful, and intended that consumers rely on them. Alternatively, Fifth Third was reckless in not knowing that its representations were deceptive and/or misleading at the time that they were made..

68. Fifth Third's unlawful, fraudulent, and/or unfair business acts and practices described herein are continuing in nature. Magee and the Illinois Consumer Protection Class

members have been damaged as a proximate result of Fifth Third's course of conduct and its violations of the Illinois Consumer Fraud and Deceptive Business Practices Act for all of the reasons set forth above, including through the imposition of deceptive and unlawful fees for balance inquiries performed at out-of-network ATMs and for deceptively and unlawfully imposing two fees when a balance inquiry is performed at an out-of-network ATM in conjunction with a withdrawal.

69. Magee and the Illinois Consumer Protection Class members respectfully request damages, equitable monetary relief, injunctive relief, declaratory relief, and attorneys' fees, costs, and expenses to be assessed against Fifth Third, within the limits set forth by applicable law.

**THIRD CLAIM FOR RELIEF**
**Unjust Enrichment**
***On behalf of the Nationwide Class***

70. Magee repeats and re-allege the preceding and subsequent paragraphs as though fully set forth herein.

71. By means of Fifth Third's wrongful conduct alleged herein, Fifth Third knowingly and wrongfully received and retained benefits and funds from Magee and the members of the Classes. In so doing, Fifth Third acted with conscious disregard for the rights of Magee and the Nationwide Class members.

72. As a result of Fifth Third's wrongful conduct as alleged herein, Fifth Third has been unjustly enriched at the expense of, and to the detriment of, Magee and the Nationwide Class members.

73. Magee and the Nationwide Class members conferred a benefit on Fifth Third when they paid $2.75 for a balance inquiry at an out-of-network ATM. Fifth Third knew of the benefit conferred upon it by Magee and the class members because it charged the fees in the first place. <u>Fifth Third's retention of this benefit was detrimental to Magee and the members of the Nationwide Class because they were deprived of funds that Fifth Third was not entitled to retain.</u>

74. It is inequitable and unjust for Fifth Third to retain the benefits it received, and is still receiving, without justification, from the fees for balance inquiries conducted at out-of-network ATMs in an unfair, unconscionable, and oppressive manner. Fifth Third's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

75. The financial benefits Fifth Third derived rightfully belong to Magee and the Nationwide Class members. Fifth Third should be compelled to disgorge in a common fund, for the benefit of Magee and the Nationwide Class members, all wrongful or inequitable proceeds Fifth Third received. A constructive trust should be imposed upon all wrongful or inequitable sums Fifth Third received traceable to Magee and the Nationwide Class members.

76. Magee and the members of the Nationwide Class have no adequate remedy at law.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Fifth Third as follows:

A. For an order certifying the Class and Subclass under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), appointing Magee as class representative and appointing his counsel as counsel for the Classes;

B. For all recoverable compensatory, statutory, and other damages sustained by Magee and the Class members;

C. For both pre-judgment and post-judgment interest on any amounts awarded;

D. For appropriate injunctive relief;

E. For payment of attorneys' fees and costs as allowable under applicable law; and

F. For such other and further relief as the Court may deem proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury in the instant action.

Dated:  October ___, 2018    Respectfully submitted,

 

_____
Stuart E. Scott
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
Telephone:  (216) 696-3232
Facsimile  (216) 696-3924
sscott@spanglaw.com

Hassan A. Zavareei (*to be admitted pro hac vice*)
Andrea R. Gold (*to be admitted pro hac vice*)
Katherine M. Aizpuru (*to be admitted pro hac vice*)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
(202) 973-0900
hzavareei@tzlegal.com
agold@tzlegal.com
kaizpuru@tzlegal.com

Jeff Ostrow (*to be admitted pro hac vice*)
Jonathan M. Streisfeld (*to be admitted pro hac vice*)
KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT
1 West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com

*Attorneys for Plaintiff and the Putative Class*